# SPAIDS *v.* COOLEY.

### IN ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued January 19, 1885.—Decided February 2, 1885.

The declaration in an action to recover money contained the money counts. The defendant pleaded the general issue, and the statute of limitation. The plaintiff replied a new promise within the statutory time. At the trial, before a jury, he offered in evidence a deposition, taken under a commission, to prove the new promise. The defendant objected to the deposition, but did not state any ground of objection. The bill of exceptions set forth, that the court "sustained the objection, and refused to permit the said deposition to be read to the jury, and ruled it out because of its informality." The deposition appearing to be regular in form; and the evidence contained in it, as to the new promise, being material, and such as ought to

have been before the jury ; and the court below having instructed the jury that the plaintiff had not offered sufficient evidence of a new promise to be submitted to the jury, and directed a verdict for the defendant ; and as, if there was such new promise, there was evidence on both sides, for the consideration of the jury, on the other issues, on proper instructions ; and as the bills of, exceptions did not purport to set out all the evidence on such other issues ; this court reversed the judgment for the defendant, and awarded a new trial.

The facts are stated in the opinion of the court.

*Mr. S. S. Henkle* for plaintiff in error.

*Mr. W. Penn Clarke* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This suit was brought in the Supreme Court of the District of Columbia, on the 13th of December, 1876, by Chauncey D. Spaids against Dennis N. Cooley, to recover $6,593.70, with interest from July 1st, 1868. The declaration contains the common money counts, and nothing more. There are two pleas, one denying indebtedness, and the other averring that the alleged cause of action did not accrue within three years before the suit. The plaintiff's reply joins issue on the first plea, and, as to the second plea, avers that the defendant promised to pay the debt named in the declaration within three years next before the commencement of the suit. At the trial, the jury found " the issue in favor of the defendant," and there was a judgment accordingly, at special term. The plaintiff appealed to the general term, which affirmed the judgment, and he brings the case here by a writ of error.

There are four bills of exceptions. They show that the trial took place in March, 1880. The first one contains the following statement : " The plaintiff, to sustain the issue on his part, offered evidence tending to show, that, some time in December, 1866, he became acquainted with one John A. Hudnall, who had a claim against the United States for cotton captured by the army during the war of the rebellion, the proceeds of which had gone into the treasury of the United

States; that said Hudnall had no means to employ counsel, and applied to him to undertake the collection of his, said Hudnall's, claim against the United States; that the plaintiff agreed to do so for a contingent fee of 30 per cent. of the amount to be recovered; that plaintiff thereupon associated with himself one Joseph Parrish, to whom he agreed to give one-fourth of the said fee, if he would assist him in the collection of said claim; that, neither the said Parrish nor the plaintiff being a lawyer, they concluded to employ the defendant to prosecute the said case in the United States Court of Claims; that the defendant was absent from the city at the time; that the contract made by the plaintiff with Hudnall was in writing, and the plaintiff thinks he inserted the name of the defendant, as the contracting party with Hudnall at the suggestion of said Parrish or one Weed, and because the plaintiff was not an attorney at law; that the plaintiff and said Parrish procured the form of a petition for instituting a suit in the Court of Claims, and prepared a petition, and had it printed and filed, according to the rules of the Court of Claims, signing the name of the defendant to said petition, as the attorney of record, without his knowledge or consent; that the plaintiff proceeded at once, under the rules of the said court, to take some testimony in the case on behalf of the claimant; that he employed Judge Merriman, a competent lawyer, to assist him in taking the testimony; that the case was partly prepared for trial before the return of the defendant to the city, and, when he came, the plaintiff and said Parrish called upon him, and informed him what they had done, and he approved of it, and agreed to take charge of and prosecute the said case; that Parrish said to the defendant, that, if successful, he could have a fee of five thousand dollars, which the defendant said would be entirely satisfactory; that they then left the agreement made with Hudnall with the defendant; that, subsequently, the defendant said to the plaintiff that the contract did not provide for making the fee a lien upon the judgment which might be recovered, and he wanted Hudnall to come and indorse this stipulation on the agreement; that the defendant afterwards took into partnership W. Penn Clark, and the firm

of Cooley & Clark did go on with the case, and prosecute it to judgment, recovering about $44,000, which was paid to said Clark; that the money paid to said Clark was about $44,000, and the plaintiff demanded from the defendant his share of the fee, which defendant, who was about leaving for his home in Iowa, said he had instructed his partner Clark to retain, and not pay over any of the money until the plaintiff had been settled with; that said Clark did not pay him any part; and that the fee retained amounted to about eleven thousand dollars. The plaintiff also gave testimony tending to show that the defendant had on several occasions promised to pay the plaintiff his share of said fee, and once in the city of Chicago, within three years before the commencement of this suit, had promised to pay said plaintiff, but that he had not done so. He testified, on cross-examination, that, when Cooley returned, he approached him and told him what the arrangement was between him and Parrish—that Parrish was to have one-fourth of his fee, out of which he was to pay Cooley; that Cooley said that was satisfactory, and he would go on and prosecute the claim; and that that was the arrangement made between him and Cooley. And the plaintiff further testified, that he rendered no services in the case at the request of Cooley or Clark, and rendered none at all after his first conversation with Cooley about it."

The fourth bill of exceptions contains the following: "And whereas the defendant had pleaded the statute of limitations, and the plaintiff replied a new promise within the three years preceding the commencement of this suit, the plaintiff, to support this issue on his part, did testify in chief, as follows: 'I next saw Cooley—well, I have seen him so many times I cannot remember when the next time was; I saw him twice in Chicago. . . . My recollection is that I next saw him in 1874. Well, I cannot exactly fix the time; it was during the oyster season, I remember; either in the spring or fall. Well, from about the first of September to the latter part of April or the first of May; mean, between the first of September, 1874, and the last of April or first of May, 1875. I met him in the street, with his satchel in his hand. He said he was

going to Washington. I asked him if he intended to pay me that money. He replied, "You should have had your money long ago, but my partner, Col. Clark, is behaving very badly; he has got a portion of the money into his hands and refuses to pay you." He said : "I am now on my way to Washington; I am going to get the best settlement I can from Clark, and upon my return I will positively pay you." He said further that he did not know but he would have to pay me himself.' And upon cross-examination, he further testified : ' Remember quite distinctly, I asked Cooley if he was going to pay me that money in the Hudnall case, or whether he was going to force me to further proceedings at law.' He said: ' You ought to have had that money long ago ; it would have been paid, but Clark is behaving very badly in the matter ; he has part of it in his hands and refuses to pay you. I do not know but what I will have to pay you myself.' That is as near precisely what he said as language can make it. I think, I cannot be much mistaken, that was, as near as possible, the very language he used. I said to Cooley : 'Are you going to pay me that money due me in that Hudnall case, or are you going to force me to further legal proceedings to get it ?' He said: ' Mr. Spaids, you ought to have had your money long ago, but Mr. Clark is behaving very badly in the matter ; he has a portion of the money in his hands and refuses to contribute towards paying you, and I do not know but that I will have to pay you myself.' ' And this was all the evidence offered by the plaintiff in support of the new promise. After overruling the prayer of the plaintiff, the court instructed the jury that the plaintiff had not offered sufficient evidence of a new promise, on the part of the defendant, to take the case out of the statute of limitations, to be submitted to them, and directed them to return a verdict for the defendant. To which instruction and direction of the court the plaintiff, by his counsel, excepted."

It must be inferred, that, as the fourth bill of exceptions states that the evidence set forth in it "was all the evidence offered by the plaintiff in support of the new promise," such evidence is the testimony referred to in the first bill of exceptions, in the statement there made that "the plaintiff also gave testimony

tending to show that the defendant had, on several occasions, promised to pay the plaintiff his share of said fee, and once, in the city of Chicago, within three years before the commencement of this suit, had promised to pay said plaintiff," but in regard to which evidence, notwithstanding the above statement, the court afterwards "instructed the jury that the plaintiff had not offered sufficient evidence of a new promise, on the part of the defendant, to take the case out of the statute of limitations, to be submitted to them, and directed them to return a verdict for the defendant."

The second bill of exceptions states that the plaintiff offered in evidence the deposition of Joseph E. Spaids, of which a copy is set forth, to which the defendant objected; that the court "sustained the objection, and refused to permit the said deposition to be read to the jury, and ruled it out because of its informality, to which ruling the plaintiff excepted."

The record shows that in December, 1879, on motion of the plaintiff, the court made an order " that a commission issue to John M. Robertson, Esq., a justice of the peace, of Algonac, St. Clair County, and State of Michigan, to take the testimony of Joseph E. Spaids, a witness for the plaintiff, on the interrogatories and cross-interrogatories filed herein, to be read in evidence on the trial of this case." The commission was issued by the court, under its seal, and the signature of its clerk, December 27, 1879, to Mr. Robertson, empowering him to examine Joseph E. Spaids " as a witness for the plaintiff in the above-entitled cause, upon the interrogatories annexed to this commission," " on oath or affirmation." The entire deposition is as follows :

"In the Supreme Court of the District of Columbia.

Chauncey D. Spaids ⎫
      *v.*     ⎬ At Law.   No. 16,894.
Dennis N. Cooley. ⎭

Interrogatories to be propounded to Joseph E. Spaids, a witness on behalf of the plaintiff in the above-entitled case, by John M. Robertson, Esq., justice of the peace, a commissioner appointed by the said court for that purpose :

1. What is your name, age, and place of residence?

2. Of what relation are you to the plaintiff?

3. Are you acquainted with the defendant Dennis N. Cooley?

4. When and under what circumstances and where you first met him? What took place between you at that time?

5. When and under what circumstances and where did you next see him?

6. State fully and particularly the conversation which took place between your father, the plaintiff, and the defendant Cooley at that time?

     *Answers to Interrogatories hereunto annexed.*

STATE OF MICHIGAN,    &#125; *ss:*
   County of St. Clair,

On this thirty-first day of December, A. D. 1879, before me, the undersigned, a justice of the peace in and for said county, personally appeared Joseph E. Spaids, of Algonac, in said county, who, being by me duly sworn according to law, doth depose and say, in relation to the case of Chauncey D. Spaids *versus* Dennis N. Cooley, hereunto annexed.

Said deponent states as follows:

No. 1. My name is Joseph E. Spaids; my age is forty-four years; and residence is Algonac, St. Clair County, Michigan.

No. 2. That the said Chauncey D. Spaids is my father.

No. 3. And am acquainted with the said Dennis N. Cooley, defendant.

No. 4. I first met the said Cooley at Chicago, in the State of Illinois, about the year 1870; that I was appointed a deputy sheriff to serve a process of a court, to wit, a summons, upon the said Cooley, in a suit then and there commenced by said Spaids against said Cooley; that I did serve said summons upon said Cooley.

No. 5. I next saw the said Cooley at Chicago, aforesaid, in year 1874. I met him on Randolph street, of said city, going towards the Pittsburgh and Fort Wayne depot. I then went into an office where my father, the plaintiff, was, and informed him that said Cooley was in the city. He asked me where he (said Cooley) was. We stepped out of said office on to the street; said Cooley being in sight, I pointed him out to said

Spaids. We both proceeded down to said Cooley, and, after the usual compliments were exchanged between said Spaids and Cooley, the following conversation took place:

No. 6. The said Spaids asked said Cooley if he was going to pay him (said Spaids) the money due him and now in his (said Cooley's) hands, in the Hudnall case, without my being obliged to resort to legal proceedings; to which said Cooley replied as follows: Mr. Spaids, you ought to have had your money long ago, for you got the case and done most of the work in the case before I (Cooley) knew much about it; but my partner, Mr. Clark, is acting very bad in the matter, and I don't know but what I will have to pay the whole amount myself; but I am now on my way to Washington, and while there I will try and get the best settlement I can with Clark, and on my return from there, which will be in about ten days, you shall have your money, if I have to pay it all myself.

I paid particular attention to said conversation, as I had often heard my father speak of said case both before and after I served said summons in 1870.

And further saith not. JOSEPH E. SPAIDS.

Taken, subscribed, and sworn to before me, the day and year first above written.

JOHN M. ROBERTSON,
*Justice of the Peace.*"

Appended to the deposition is a certificate under the hand and seal of the clerk of the county of St. Clair, Michigan, certifying to the official character of Robertson, as a justice of the peace.

It must be intended that the defendant objected to the admission of the deposition because of some alleged informality, but what that was is not set forth in connection with the objection; nor is it stated what the informality was on account of which the court ruled out the deposition. The deposition appears to be regular in form. It was taken under a commission issued by the court, and executed by the commissioner named. The interrogatories forming part of it were put and

answered under a sufficient oath, administered before the answers were taken.   The answers are not in narrative form, nor in the form of an affidavit, but each is an answer to the specific interrogatory of corresponding number.   The place where the deposition was taken sufficiently appears.   The fact that there were no cross-interrogatories cannot affect the regularity, because, under the order for the commission, made twelve days before it issued, and providing for the taking of the testimony " on the interrogatories and cross-interrogatories filed herein," it was for the defendant to show distinctly that there were cross-interrogatories filed which had not been annexed to the commission.   In the absence of any apparent informality, if the objection made by the defendant to the admission of the deposition was made on the ground of an informality, that ground, to avail him here, should appear in the bill of exceptions, with a sufficient statement to enable this Court to see that the ground was a valid one; and the informality on which the deposition was ruled out should, to avail him, be stated in the bill of exceptions, with sufficient other matter to enable this Court to say that the identical informality on which the ruling of the court proceeded existed, and was good ground for the ruling.   As the defendant made the objection to the admissibility of the deposition, and it was excluded, it was incumbent on him to make it appear, by the bill of exceptions, what the ground of objection was, and that it was a valid ground. The evidence, in the excluded deposition, as to the new promise, was material, and ought to have been before the jury, as tending to show an absolute promise by the defendant to the plaintiff, made within three years before the bringing of the suit, to pay to the plaintiff the money in question, as money then in the hands of the defendant, and due to the plaintiff. As the direction of a verdict for the defendant appears to have been rested on the instruction that there was not sufficient evidence to be submitted to the jury, of a new promise, to take the case out of the statute of limitations, and as, if the jury had found that there was such new promise, there was evidence on both sides for the consideration of the jury on the other issues, under proper instructions, and the bills of exceptions do

not purport to set out all the evidence on such other issues, a new trial must be had.

> *The judgment of the court in general term is reversed, and the case is remanded to that court, with a direction to reverse the judgment of the court in special term, with costs, and to direct that court to award a new trial.*